CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 18 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT "PETE" THOMPSON,  Plaintiff, | ) ) ) | Civil Action No. 7:11-cv-00349 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| HEINER'S BAKERY, *et al.*  Defendants. | ) ) ) | By: Samuel G. Wilson  United States District Judge |

This is an action by plaintiff Robert Thompson, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, for damages and equitable relief to redress alleged disability discrimination by the defendant, Sara Lee Corporation.[1] Thompson claims that Sara Lee fired him in violation of the ADA after the company began a fleet-wide carrying-capacity upgrade of its delivery trucks. With those upgrades in place, Department of Transportation regulations required all Sara Lee truck-drivers to obtain a medical certification—a certification Thompson is unable to obtain because of his surgically implanted heart defibrillator. Thompson proposes that Sara Lee accommodate his condition by partially suspending its fleet upgrade and providing him a non-upgraded, lower-capacity truck, thereby allowing him to avoid the DOT requirement. Sara Lee responds that Thompson has failed, on multiple levels, to establish a prima facie case of discrimination under the ADA. Because driving a higher-carrying-capacity delivery truck bears more than a marginal relationship to the job of a Sara Lee delivery driver, the court finds the task to be an essential function of employment for which Sara Lee can offer Thompson no lawful accommodation. And even if the court were to accept Thompson's argument that driving a higher-capacity truck is not an essential function of the job, Thompson's

---

[1] Heiner's Bakery is an operation of Earthgrains, which was, at all times relevant to this case, a subsidiary of Sara Lee. This opinion will collectively refer to the defendants as "Sara Lee" throughout.

proposed accommodation is unreasonable because it would impose an undue burden on Sara Lee. Accordingly, the court will grant Sara Lee's motion for summary judgment.

## I.

Sara Lee hired Thompson in 2002 to deliver baked goods from its Roanoke depot in a large box-style delivery truck. Thompson worked in this position without event until February 28, 2007, when he suffered a "ventricular tachycardia arrest and seizure of unknown etiology." (Pl.'s Resp. Mot. Summ. J. 3, E.C.F. 42.) Thompson's heart had begun to alternate between beating much too quickly and briefly stopping, and his physicians had to apply an electrical shock to his heart to force it to resume beating normally. Thompson's physicians were unable to determine the exact cause of the event. As a precautionary measure, physicians implanted an electronic defibrillator in Thompson's chest, designed to restart his heart were it to stop again.[2] After the operation, Thompson took nine weeks of medical leave and then gradually resumed his workplace duties with no restrictions.

In 2002, anticipating expanding business needs, Sara Lee ceased purchasing trucks with gross vehicle weight ratings ("GVWRs")[3] of 10,000 pounds or less. And in late 2008, Sara Lee finally announced it would upgrade all of its trucks to carry higher payloads; each truck would now feature a GVWR greater than 10,000 pounds. In some cases, this would require Sara Lee to replace old chassis components with sturdier hardware. In others, it would merely require Sara

---

[2] One of Thompson's physicians described this event as a "sudden death episode." (Resp. Mot. Summ. J. Ex. Q, E.C.F. No. 42-14.) Another noted that if Thompson's heart "had not been shocked he would have died." (Id. Ex. Z, E.C.F. No. 42-23.) Thompson experienced a similar event in 2010 while cutting the lawn. On that day, however, Thompson's defibrillator shocked his heart five times during a two-minute period and allowed his heart to resume a normal rhythm.

[3] GVWR is the total allowable weight, as specified by a manufacturer, of a vehicle when loaded. See 49 C.F.R. § 390.5. The total loaded weight of a truck with a GVWR of 10,000 pounds should thus not exceed 10,000 pounds.

Lee to re-register already-capable trucks to reflect higher GVWRs. Under federal DOT regulations, when a truck has a GVWR in excess of 10,000 pounds and is used in interstate commerce, any driver of that truck must be certified as physically qualified. 49 C.F.R. § 391.41. Specifically, a "medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.43(f). Because the DOT defines interstate commerce broadly,[4] the regulations would require all Sara Lee employees with truck-driving responsibilities to obtain the medical certification in order to operate its upgraded trucks.

When Thompson sought certification in October of 2008, his medical examiner found him ineligible under the regulations because of his new internal defibrillator.[5] However, Thompson continued to drive his truck until April of 2009, when he asked Sara Lee, by letter, to

---

[4] According to the regulations:
Interstate commerce means trade, traffic, or transportation in the United States--
(1) Between a place in a State and a place outside of such State (including a place outside of the United States);
(2) Between two places in a State through another State or a place outside of the United States; or
(3) Between two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States.
Intrastate commerce means any trade, traffic, or transportation in any State which is not described in the term "interstate commerce."
49 C.F.R. § 390.5. Thompson makes no serious effort to establish that Sara Lee's trucks are not subject to the DOT regulations, other than to say "Thompson's route was local to Roanoke." (Pl.'s Resp. Mot. Summ. J. 4, E.C.F. No. 42.) Given that Thompson worked for a division of Sara Lee that produced bread products in West Virginia for delivery to businesses in West Virginia, Ohio, Virginia, and eastern Kentucky, there is no question that the DOT regulations applied. (See Mot. Summ. J. Ex. 1, at 7, E.C.F. No. 35-3.)

[5] The regulations instruct the medical examiner to "[n]ote murmurs and arrhythmias, and any history of an enlarged heart, congestive heart failure, or cardiovascular disease that is accompanied by syncope, dyspnea, or collapse. Indicate onset date, diagnosis, medication, and any current limitation. An electrocardiogram is required when findings so indicate." 49 C.F.R. § 391.43(f). The examination form included in this section notes that "implantable cardioverter defibrillators are disqualifying due to risk of [loss of consciousness]." Id. at Instructions to the Medical Examiner.

accommodate his condition by retaining an older, lower-carrying-capacity truck for his use. Thompson underwent a second medical examination on April 14, 2009, and again the medical examiner denied the certification.[6]

Sara Lee soon responded to Thompson's accommodation request, explaining that Sara Lee's fleet-wide upgrade meant the company could not feasibly provide Thompson with a lower-capacity truck. Sara Lee put Thompson on a leave of absence, and ultimately terminated him on July 16, 2009. By August of 2009, Sara Lee had upgraded every truck at its Roanoke depot to the new GVWR standard. Thompson complained to the EEOC about his termination. On April 29, 2011, the EEOC issued Thompson a Notice of Rights letter, and, in turn, Thompson filed this lawsuit.

## II.

### A.

Sara Lee argues that summary judgment is appropriate[7] because Thompson is unable to perform the essential functions of a Sara Lee delivery driver. The court agrees and finds that the ability to drive a delivery truck with a GVWR in excess of 10,000 pounds bears more than a "marginal relationship" to the job of a Sara Lee delivery truck driver and is, therefore, an essential job function. And because Thompson cannot lawfully perform an essential job

---

[6] Around this time, Sara Lee offered Thompson a position as a part-time loader at its Dublin, Virginia depot.

[7] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

4

function, he is not qualified and Sara Lee did not discriminate against him in violation of the ADA.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual[8] on the basis of disability[9] in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA-prohibited discrimination comes in several varieties, see § 12112, including an employer's failure to reasonably accommodate an otherwise-qualified disabled individual. § 12112(b)(5)(A).

To succeed on a failure-to-accommodate claim, a plaintiff must establish a prima facie case by demonstrating that (1) he was disabled under the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) the employer refused to make reasonable accommodation. Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001). According to the EEOC regulations, essential job functions include "fundamental job duties of the employment position the individual holds or desires," 29 C.F.R. § 1630.2(n), which "bear more than a marginal relationship to the job at issue." Tyndall v. Nat'l Educ. Ctrs., Inc, 31 F.3d 209, 213 (4th Cir. 1994). The ADA instructs that courts consider "the employer's judgment as to what functions are essential," and "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." § 12111(8).

---

[8] A "qualified individual [is] an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8).

[9] A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . a record of such impairment; or . . . being regarded as having such impairment." § 12102(1). The court assumes, without deciding, that Thompson is disabled.

In this case, the court finds that the essential function of a Sara Lee delivery driver is to operate a truck with a GVWR in excess of 10,000 pounds, and that Thompson cannot perform that function, either with or without reasonable accommodation. Even if the court were to withhold the essential-function deference to which Sara Lee is entitled under the law, it is clear to the court that one of a delivery-truck driver's essential functions—the "fundamental duty" of which the regulations speak—is to drive the company delivery trucks, which here have GVWRs in excess of 10,000 pounds. Driving a Sara Lee delivery truck not only "bear[s] more than a marginal relationship to the job," it *is* the job. And there is no accommodation, reasonable or otherwise, Sara Lee can offer Thompson that would enable him in that endeavor—the DOT regulations flatly prevent it. See Bay v. Cassens Transport Co., 212 F.3d 969, 974 (7th Cir. 2000) ("Under applicable DOT regulations, [the defendant] was not allowed to permit [the plaintiff] to resume driving until he produced a copy of a doctor's certificate indicating he was physically qualified to drive, . . . and nothing in the ADA purports to change that obligation."); Myers v. Hose, 50 F.3d 278, 282–85 (4th Cir. 1995) (holding that a diabetic bus driver subject who failed a DOT medical examination was unable to perform the job's essential functions); Chandler v. City of Dallas, 2 F.3d 1385, 1394–96 (5th Cir. 1993) (holding, based on DOT regulations, that diabetic bus drivers and visually impaired bus drivers were not qualified for the job).

Thompson argues that the job's essential functions do not include driving a truck with a GVWR in excess of 10,000 pounds. In support of his position, Thompson offers an alleged advertisement for the Sara Lee delivery-driver job that does not allude to GVWRs or DOT medical certifications. While job descriptions are a legitimate means of proving a job's essential

6

functions, the contested job-posting[10] in this case does not overcome the uncontested evidence that Sara Lee in fact decided to upgrade its fleet to higher-capacity trucks and has not purchased a lower-capacity truck since 2002. By August of 2009, every truck at Sara Lee's Roanoke depot had a GVWR in excess of 10,000 pounds. Thus, regardless of how the proffered job-posting described the delivery-driver position, an applicant for the position still would need the ability to lawfully drive Sara Lee's upgraded trucks.

Thompson further contests Sara Lee's characterization of the job's essential functions by pointing out that he has been performing the job ably for several years with a lower-capacity truck, and that Sara Lee even allowed him to continue driving for five months after the first failed medical evaluation. Both of these facts, according to Thompson, demonstrate that that the job's essential function is not to drive a higher-capacity truck. Here again, however, Thompson's argument ignores the underlying, uncontested fact of Sara Lee's fleet upgrade. In response to growing sales, Sara Lee made a business decision to deliver its goods using a nationwide fleet of trucks with GVWRs in excess of 10,000 pounds. As business necessity evolves, so too can a job's essential functions. Sara Lee is no more obligated to pause its evolving business model in order to retain a current employee than it is to rewind its current business model to hire a new employee. See EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992) ("It is not the purpose of the EEOC nor the function of this court to second guess the wisdom of business decisions."); Webster v. Henderson, 32 F. App'x 36, 43 (4th Cir. 2002) ("It is not the purpose of this court to second guess the wisdom of business decisions . . . ."); Kephart v. Inst. of Gas Tech., 630 F.2d 1217, 1223 (7th Cir. 1980) (The ADA is "not intended as a

---

[10] Thompson offers a screenshot of the posting from www.heinersbakery.com. (Pl.'s Resp. Mot. Summ. J. Ex. A, E.C.F. 42-1.) Sara Lee, on the other hand, offers deposition testimony explaining that this advertisement is a snippet of the complete posting, which can be found on the Sara Lee website—where all potential delivery drivers must apply for employment. (Def.'s Reply Ex. 3, E.C.F. 46-5.)

vehicle for judicial review of business decisions"). Accordingly, the court finds that Thompson is unable to perform an essential function of the job and will grant Sara Lee's motion for summary judgment.

### B.

Even if the court were to accept Thompson's characterization of the job—that its essential functions do not include driving a higher-capacity truck—such that Thompson could perform the job given the accommodation of a lower-capacity truck, that accommodation would impose an undue burden on Sara Lee.

A reasonable accommodation can include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." § 12111(9). But an accommodation is not reasonable if it "would impose an undue hardship on the operation of [an employer's] business." § 12112(b)(5)(A). The plaintiff bears the burden of identifying an accommodation that would allow him to perform his job, and he has the ultimate burden of persuasion in demonstrating that such an accommodation is reasonable. See Shin v. Univ. of Md. Med. Sys. Corp., 369 F. App'x 472, 482 4th Cir. 2010) (citing Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997)).

Thompson's claim fails because the uncontradicted evidence shows that the proposed accommodation would place an undue burden on Sara Lee. Thompson describes the accommodation as requiring little more of Sara Lee than its refraining from registering an existing lower-capacity truck as a higher-capacity truck. The undisputed evidence, however, indicates the accommodation is hardly that simple. First, Sara Lee has not purchased a lower-

capacity truck since 2002. Consequently, any truck Thompson drove would be at least ten years old and less reliable than the new higher-capacity trucks. Second, even if an older truck was no less reliable than a newer truck, mechanical break-downs are indeed inevitable and would require either that Sara Lee keep a second truck on hand for Thompson, or that Sara Lee assign another driver to Thompson's route when his truck was not running. Third, there is the difficulty of assuring that Thompson's lower-capacity truck was never overloaded with goods and therefore out of compliance with DOT regulations. Rather than simply loading a truck and without worry sending a driver lawfully onto the road in a higher-capacity truck, Sara Lee would need some means of assuring itself that Thompson's truck carried an appropriately light load. Fourth, as Sara Lee's business continues to grow throughout the region, the company would be forced to restrict Thompson's delivery route while reworking others to absorb the new volume. And if sales volume were to grow within the confines of Thompson's route, Sara Lee would need to ensure he could lawfully deliver that increased volume, and shrink his route if not. These difficulties constitute a far greater burden than simply maintaining a truck's current GVWR. Rather, the accommodation would impose an undue, if not unworkable, burden on Sara Lee.[11] It would compel Sara Lee to reshape its business model in order to adhere to court-dictated payload limitations and distribution methodologies—a result the ADA does contemplate.[12]

---

[11] The court does not decide as a matter of law the questions of whether the part-time loader position was a reasonable accommodation or whether Thompson refused the position.

[12] Sara Lee also claims that Thompson did not timely file his charge with the EEOC. However, in paragraph three of its answer, Sara Lee admitted that Thompson timely filed a charge with the EEOC. This constitutes a waiver of its untimeliness argument. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); EEOC. v. Mico Oil Co., Inc., 1988 WL 130660 (D. Kan. Nov. 21, 1988) ("By admitting that all conditions precedent had been met, the defendants waived any affirmative defense based on the untimeliness of [the plaintiff's] filing her charge with the EEOC."); see also Exhaustion of Administrative Remedies as Prerequisite to Action Under Title I of Americans with Disabilities Act (42 U.S.C. §§ 12111–12117), 169 A.L.R. Fed. 439 ("As filing with the EEOC is clearly required before

## III.

No reasonable jury could find that driving a Sara Lee delivery truck bears only a marginal relationship to the job of a Sara Lee delivery driver. Because of DOT regulations, there is no accommodation that would enable Thompson to drive the trucks in Sara Lee's upgraded fleet. And even if the court accepts Thompson's characterization of the job's essential functions, the accommodation Thompson seeks would impose an undue burden on Sara Lee. Thus, Thompson has not established a prima facie case of ADA discrimination, and the court will grant Sara Lee's motion for summary judgment.

**Enter:** May 18, 2012.

_____
UNITED STATES DISTRICT JUDGE

---

bringing an action under Title I of the Americans with Disabilities Act (42 U.S.C. §§ 12111–12117), a plaintiff may avoid a motion to dismiss or for summary judgment on that issue by issuing a request for admissions in which the defense admits that a charge was timely filed with the EEOC and that all conditions precedent have been satisfied.").